**2015-1091**

# United States Court of Appeals
# for the Federal Circuit

MCM PORTFOLIO LLC,

*Appellant,*

*v.*

HEWLETT-PACKARD COMPANY,

*Appellee.*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. IPR2013-00217.*

## BRIEF FOR APPELLEE

Marcia H. Sundeen
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000

T. Cy Walker
Robert Louis Hails, Jr.
Adeel Haroon
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005
(202) 220-4200

*Counsel for Appellee*

March 19, 2015

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*MCM Portfolio LLC v. Hewlett-Packard Company*, 2015-1091

## CERTIFICATE OF INTEREST

Counsel for the Appellee Hewlett-Packard Company, Marcia H. Sundeen, certifies the following:

1. The full name of every party or amicus represented by me is:

   Hewlett-Packard Company

2. The name of the real party in interest represented by me is:

   Hewlett-Packard Company

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Goodwin Procter LLP

       Marcia H. Sundeen

       Kenyon & Kenyon LLP

       T. Cy Walker, Robert L. Hails, Jr., Rose Cordero Prey, Adeel Haroon

Dated: March 19, 2015         /s/ Marcia H. Sundeen
                                Marcia H. Sundeen

# TABLE OF CONTENTS

*Page*

Certificate of Interest ...................................................................................i

Table of Contents ....................................................................................... ii

Table of Authorities ................................................................................... iv

Statement of Related Cases ........................................................................ vi

I.      Statement of Jurisdiction ................................................................1

II.     Statement of the Issues ...................................................................1

        A.      Decision to Institute ..............................................................1

        B.      Final Written Decision ..........................................................2

III.    Statement of the Case ......................................................................2

IV.     Statement of the Facts .....................................................................3

        A.      The '549 Patent .....................................................................3

        B.      The Prior Art: Kobayashi and Kikuchi ................................5

                1.      Kobayashi ....................................................................5

                2.      Kikuchi .........................................................................7

        C.      The Inter Partes Review proceedings ...................................8

                1.      The Board's Decision to Institute and Scheduling Order ..........8

                2.      The Patent Owner's Response and oral argument ...................11

                3.      The Board's Final Written Decision .........................12

V.      Summary of Argument ...................................................................13

VI.     Argument ........................................................................................15

        A.      Standard of Review .............................................................15

B.     This Court lacks jurisdiction to review MCM's first two issues on appeal because they were decided in the Board's Decision to Institute ........................................................................................15

    1.     The Board's Decision to Institute is not reviewable in an appeal of the Final Written Decision .......................................15

    2.     This case does not present circumstances warranting mandamus review of the Board's Decision to Institute ..........17

C.     The Board's obviousness determination should be affirmed.............22

    1.     The Board properly limited its Final Written Decision to the sole argument that MCM presented in its Patent Owner's Response: Whether the prior art adequately teaches a single-chip controller.................................................23

    2.     The Board's factual findings are supported by substantial evidence .................................................................................25

    3.     MCM's other arguments should be rejected............................27

D.     Inter Partes Reviews do not violate the Seventh Amendment or Article III ...............................................................................................29

Conclusion and Statement of Relief Sought ...........................................................34

Certificate of Compliance .......................................................................................37

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page**

*Aevoe Corp. v. AE Tech. Co.*,
   727 F.3d 1375 (Fed. Cir. 2013) ........................................................................23

*In re Baxter Int'l, Inc.*,
   678 F.3d 1357 (Fed. Cir. 2012) ........................................................................29

*Cooper v. Lee*,
   No. 1:14-cv-00672-GBL-JFA, 2015 WL 686041 (E.D. Va. Feb.
   18, 2015) .........................................................................................................32

*In re Cuozzo Speed Tech., LLC*,
   ___ F.3d ___, No. 2014-1301, 2015 WL 448667 (Fed. Cir. Feb. 4,
   2015) ........................................................................................................*passim*

*Int'l Nutrition Co. v. Horphag Research, Ltd.*,
   220 F.3d 1325 (Fed. Cir. 2000) ..................................................................22, 23

*Joy Tech., Inc. v. Manbeck*
   959 F.2d 226 (Fed. Cir. 1992), *cert denied*, 506 U.S. 829 (1992) ....................33

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
   688 F.3d 1342 (Fed. Cir. 2012) ..................................................................24, 25

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007).........................................................................24, 28, 29, 30

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996).....................................................................................34, 35

*McCormick Harvesting Mach. Co. v. Aultman*,
   169 U.S. 606 (1898).........................................................................................33

*Patlex Corp. v. Mossinghoff*,
   758 F.2d 594 (Fed. Cir. 1985) ................................................................*passim*

*In re MCM Portfolio, LLC*,
   554 F.App'x. 944 (Fed. Cir. 2014) .........................................................*passim*

*Pregis Corp. v. Kappos*,
   700 F.3d 1348 (Fed. Cir. 2012) ..........................................................25

*Stern v. Marshall*,
   131 S. Ct. 2594 (2011).............................................................34, 36

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)..................................................................22

*In re Tech. Licensing Corp.*,
   423 F.3d 1286 (Fed. Cir. 2005) ..........................................................35

*Tegal Corp. v. Tokyo Electron Am., Inc.*,
   257 F.3d 1331 (Fed. Cir. 2001) ...............................................18, 35

## STATUTES

35 U.S.C. § 103(a) ...............................................................24

35 U.S.C. § 314(a) ...............................................................19

35 U.S.C. § 314(d) ...............................................................1, 16, 18, 19

35 U.S.C. § 316 (e) ...............................................................19

35 U.S.C. § 319....................................................................18

Pub. L. No. 112-29, § 3(n), 125 Stat. 284 (2011) ....................................24

## RULES AND REGULATIONS

77 Fed. Reg. 48,756 (Aug. 14, 2012) ................................................26

## LEGISLATIVE HISTORY

154 CONG. REC. S9,987 (daily ed. Sept. 27, 2008)................................... 21-22

157 CONG. REC. S5,374-76 (daily ed. Sept. 7, 2011) ...............................32, 33

<u>STATEMENT OF RELATED CASES</u>

Appellant MCM Portfolio LLC ("MCM") previously filed a petition for mandamus with this Court concerning the Patent Trial and Appeal Board's decision to institute in the inter partes review proceedings that are the subject of the instant appeal. A panel consisting of then-Chief Judge Rader and Circuit Judges Dyk and Wallach denied the petition on February 18, 2014, in a non-precedential opinion. *See In re MCM Portfolio, LLC*, 554 F.App'x. 944, 945 (Fed. Cir. 2014).

Hewlett-Packard Company ("HP") is not aware of any other case pending before this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal. MCM identified *Technology Properties Limited LLC v. Action Electronic Co.*, et al., No. 2:11-cv-00372-TJW (E.D. Tex.), as a related case in its brief, but that case no longer involves U.S. Patent No. 7,162,549 ("'549 patent"). The case was transferred to the Northern District of California in October 2014, where it was assigned No. 4:14-cv-04616, and following transfer, the plaintiffs filed an amended complaint that contains no allegations of infringement relating to the '549 patent. MCM identified *Certain Digital Photo Frames and Image Display Devices and Components Thereof*, ITC Investigation No. 337-TA-807, as a related case in its brief, but that matter has been terminated. MCM also identified U.S. patent application number 12/341,691

as a related case in its brief, but that is a reissue prosecution matter pending before

the U.S. Patent and Trademark Office ("PTO").

# I.     STATEMENT OF JURISDICTION

This appeal arises from a final written decision of the Patent Trial and Appeal Board ("Board") in an inter partes review proceeding. The Board issued its final written decision on August 6, 2014, and MCM filed a timely notice of appeal on October 1, 2014. This Court has jurisdiction over the Board's final written decision under 28 U.S.C. § 1295(a)(4)(A) but does not have jurisdiction to review the Board's decision to institute the inter partes review, which by statute is "final and nonappealable." 35 U.S.C. § 314(d).

## II.   STATEMENT OF THE ISSUES

### A.   Decision to Institute

HP petitioned the PTO for inter partes review of MCM's '549 patent. The petition proposed various grounds of invalidity of claims 7, 11, 19 and 21 based on prior art. MCM urged, inter alia, that HP's petition failed to teach all elements of the claims and that institution was barred under 35 U.S.C. § 315(b) because HP was in privity with another entity (Pandigital, Inc.) that was sued over the '549 patent more than one year before HP filed its petition. The Board instituted inter partes review for the challenged claims, rejecting both of MCM's arguments. MCM now challenges the Board's decision to institute the inter partes review, and those challenges present the following issues on appeal:

1.     Whether this Court lacks jurisdiction to review the Board's decision to institute the inter partes review notwithstanding alleged deficiencies of HP's obviousness presentation made in its petition.

2.     Whether this Court lacks jurisdiction to review the Board's decision to institute the inter partes review and rejection of MCM's argument that HP's petition was barred under 35 U.S.C. § 315(b).

### B.   Final Written Decision

The Board concluded in its final written decision that claims 7, 11, 19 and 21 are obvious over the combination of two prior art references, U.S. Patent No.

6,199,122 ("Kobayashi") and WO/98/03915 ("Kikuchi"). MCM appeals that decision, and those challenges present the following additional issues on appeal:

3.      Whether the Board's conclusion of obviousness is correct based on findings of fact that are supported by substantial evidence.

4.      Whether the Board's decision violates MCM's Seventh Amendment rights or Article III of the U.S. Constitution.

### III.    STATEMENT OF THE CASE

MCM owns the '549 patent. HP filed a petition with the PTO to institute an inter partes review of claims 7, 11, 19 and 21 of the '549 patent. The Board granted the petition in part and issued a decision to institute for all challenged claims on a single ground – obviousness over Kobayashi and Kikuchi. A29. MCM sought mandamus review of the Board's decision to institute, which this Court denied. *In re MCM Portfolio, LLC*, 554 F.App'x. 944, 945 (Fed. Cir. 2014). The Board ultimately issued a final written decision that held that all challenged claims are obvious over this prior art. A12.

MCM appeals from the Board's decision to institute and its final written decision and also challenges the constitutionality of inter partes reviews. The Director of the PTO intervened in the appeal. J. Carl Cooper filed an amicus brief concerning the constitutionality of inter partes reviews.

# IV.   STATEMENT OF THE FACTS

## A.   The '549 Patent

The '549 patent issued on January 9, 2007, from an application that was filed on October 4, 2002. A271. The '549 patent describes itself as a multimode controller for intelligent and "dumb" memory cards – essentially, a controller that can interface with memory cards that have onboard controllers (intelligent cards) and also with memory cards that have no onboard controllers (dumb cards). A271 (Abstract). When a new memory card is presented, the multimode controller determines whether the card has an onboard controller or not. A322 (col. 29:10-36). If the card does not have its own controller, then the multimode controller uses firmware to perform error correction and bad block mapping on behalf of the controllerless card. A321 (col. 28:51-60).

The inter partes review challenged the validity of method claims 7 and 19 and system claims 11 and 21. Claims 7 and 11 are reproduced below:

7. A method comprising:

using a controller chip to interface a flash storage system with or without a controller to a computing device, the controller chip comprising a flash adapter, wherein the flash storage system comprises a flash section and at least a medium ID;

determining whether the flash storage system includes a controller for error correction; and

in an event where the flash storage system does not have a controller for error correction, using firmware in the flash adapter to perform operations to manage error correction of the

flash section, including bad block mapping of the flash section in the flash storage system that is coupled to the flash adapter section.

11. A system comprising:

a computing device;

a flash storage system comprising a flash section and at least a portion of a medium ID; and

a controller chip coupled between the computing device and the flash storage system to interface the flash storage system to the computing device, the controller chip comprising

an interface mechanism capable of receiving flash storage systems with controller and controllerless flash storage systems,

a detector to determine whether the flash storage system includes a controller for error correction and

a flash adapter which comprises firmware to perform, in an event where the flash storage system does not have a controller for error correction, operations to manage error correction of the flash section, including bad block mapping of the flash section in the flash storage system that is coupled to the flash adapter section.

A322. Claims 19 and 21, which depend from claims 7 and 11, respectively, each additionally recite that "the flash adapter further comprises a plurality of interfaces for receiving a plurality of flash storage systems." A323.

## B.     The Prior Art: Kobayashi and Kikuchi

The Board concluded that the challenged claims are obvious over Kobayashi and Kikuchi. A12. Kobayashi was filed in the United States on July 22, 1998, and

6

was granted on March 6, 2001. A325. Kikuchi was published on January 29, 1998.

A345. There is no dispute that both references are prior art to the '549 patent.

### 1.    Kobayashi

Kobayashi describes a peripheral device for a computer that converts serial

commands of the computer to parallel commands that control a storage medium,

such as a flash-memory card. A336-37 (cols. 2:55-64, 3:63-65). This configuration

is shown in Figure 1, which illustrates a computer 11, a reader/writer 12, and a

flash-memory card 13. A338 (col. 5:54-58). The reader/writer includes a

conversion controller 122, an ATA controller 124, and a connector 125 for reading

a flash-memory card 13. A338 (col. 6:5-9). Kobayashi states that the "conversion

controller 122 is configured of a one-chip microprocessor or the like." A338 (col.

6:12-14).



**Kobayashi, FIG. 1 (A326)**          **Kobayashi, FIG. 11 (A334)**

Kobayashi discloses another embodiment in Figure 11. The Figure 11 embodiment works with two types of flash-memory cards 13 – cards that have onboard controllers and cards that do not have onboard controllers. A341 (col. 12:59-65). A sensor 133 determines which type of flash-memory card 13 is presented when it is inserted into the connector 125. A341-42 (cols. 12:59-13:2). When a flash-memory card with no controller is detected, the selector 134 connects the ATA controller 124 to the connector 125 and, by extension, to the controllerless card 13. A342 (col. 13:2-5). When a flash-memory card with a controller is detected, the selector 134 connects the conversion controller 122 to the connector 125 and also to the card 13. A342 (col. 13:5-8).

8

## 2.    Kikuchi

Kikuchi describes a flash-memory card having an interface connected to a host computer 14. A345 (Abstract). In Figure 1, Kikuchi shows the flash memory card having a controller 10 on the flash-memory card. A385. The controller 10 is a one-chip controller. A353 (ll. 10-15).



**Kikuchi, FIG. 1 (A385)**          **Kikuchi, FIG. 2 (A386)**

Figure 2 is a block diagram showing the functional arrangement of the controller 10, which includes a reset processor 22, an address converter 24, a command processor 26, a flash table controller 28, and an error controller 32. A355 (ll. 14-20); A386. These processors 22, 26 and controllers 28, 32 are integrated in the one-chip controller 10 along with other circuitry, such as a host/controller interface 20 and a flash/controller interface 34. A355 (ll. 11-20).

Kikuchi's error controller 32 performs error correction for read and write operations. A355 (ll. 14-20); A357 (ll. 17-19). The error controller 32 also performs bad block mapping, which is described as "a block substituting process or the like in the event of a failure or error." A357 (ll. 17-21). In a separate

9

embodiment, controller 10 "refers to the block quality flag contained in the block status information of the redundant portion of the readout information . . . to check whether the head block BL0 is non-defective or not" and "detects a non-defective block BLj having the highest address rank." A366 (ll. 20-24); A367 (ll. 2-5).

Kikuchi also describes an embodiment in Figure 15A where the one-chip controller 110[1] is incorporated in the adapter 120, instead of the flash memory card, to interface with flash memory cards with no on-card controllers. A377 (ll. 9-21).



F I G. 15A
**Kikuchi, FIG. 15A (A397)**

**C.    The Inter Partes Review proceedings**

**1.    The Board's Decision to Institute and Scheduling Order**

HP filed a petition for inter partes review on March 27, 2013, challenging claims 7, 11, 19 and 21 and alleging four grounds of invalidity. The only ground relevant to the present appeal is the obviousness challenge based on Kobayashi and

---

[1]    The one-chip controller 10 is given reference no. 10 in the discussion of FIGS. 1 and 11. It is given reference no. 110 in the discussion of FIG. 15.

Kikuchi. HP alleged that Kobayashi and Kikuchi teach all elements of the challenged claims and, therefore, render them obvious. A23. HP's petition was supported by a declaration from its expert, Dr. Sanjay Banerjee, and claim charts demonstrating element-for-element correspondence between the references' disclosures and the challenged claims. A94-98 (claim charts).

MCM filed a preliminary response in June 2013. MCM argued that HP's petition was barred under 35 U.S.C. § 315(b) based on a patent infringement complaint that MCM's exclusive licensee (TPL) had served on Pandigital more than one year before HP filed its petition. A104. According to MCM, HP and Pandigital were in privity because HP resold Pandigital digital photo frame products that allegedly infringe the '549 patent. MCM also argued against institution on grounds that: 1) Kobayashi did not disclose using firmware to perform error correction in the event the flash memory card has no controller (A125), 2) Kikuchi's controller chip could not be incorporated into Kobayashi's controller (A131), and 3) Kikuchi and Kobayashi were cumulative of art before the Examiner during prosecution (A129).

The Board issued its decision to institute in September 2013, concluding that HP's "petition and supporting evidence demonstrate sufficiently that combining the teachings of Kobayashi and Kikuchi merely is a predictable use of prior art elements according to their established functions—an obvious improvement." A29

11

(citations omitted). The Board rejected MCM's privity argument because MCM provided no evidence that HP could have exercised control over Pandigital's participation in the Texas action, and the Board concluded that successive ownership of the same allegedly infringing property was insufficient alone to confer privity for purposes of § 315(b). A20-21.

The Board found MCM's arguments against the prior art unpersuasive. As for MCM's argument concerning Kobayashi's lack of disclosure relating to firmware for error correction, the Board concluded "MCM concede[d] that Kikuchi discloses a controller using firmware to perform error correction." A28. The Board found unpersuasive MCM's argument that Kikuchi's controller could not be combined with Kobayashi's controller into a single chip because "'a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements'" and because "combining the teachings of Kobayashi and Kikuchi merely is a predictable use of prior art elements according to their established functions." A28-29 (citations omitted). The Board also rejected MCM's argument that Kikuchi and Kobayashi were cumulative of prior art before the Examiner because "substantially the same prior art and arguments were not before the Office previously." A29.

The Board issued a Scheduling Order on September 10, 2013, which stated that any arguments for patentability that are not raised in the patent owner's response would be waived. A1251.

The following month, MCM petitioned this Court for mandamus review of the Board's decision granting HP's petition, arguing that the Board erred and abused its discretion in instituting inter partes review. MCM urged that HP was barred under § 315(b) from petitioning for inter partes review based upon HP's alleged privity with Pandigital. This Court denied MCM's petition finding that MCM had not met the heavy burden required for mandamus, but noting it was "without prejudice to MCM attempting to raise its section 315(b) arguments on appeal after final decision by the Board." *In re MCM*, 554 F.App'x at 945.

### 2.    The Patent Owner's Response and oral argument

MCM filed its patent owner's response in December 2013, raising only three issues:

- The Board lacked subject matter jurisdiction to consider the inter partes review under the Seventh Amendment (A188),

- The Board should not have instituted the inter partes review because the prior art failed to disclose a single "chip" (A200), and

- The claims are patentable because the prior art failed to disclose the single "chip" (A207).

MCM did not present in its response any evidence of patentability, such as expert declarations or secondary considerations. MCM also did not maintain its other patentability arguments from its preliminary response.

HP filed its reply to the patent owner's response in March 2014, and the Board held oral argument in June 2014. On the issue of whether one of skill would have a reason to perform the recited functionality in a single chip, MCM's counsel acknowledged at oral argument that it is common in the field of integrated circuits to include increasing amounts of functionality into a single chip.

> JUDGE PERRY: Counsel, are you saying that it is beyond the skill of one of ordinary skill at the time of this invention to put multiple functions integrated into a single chip?
>
> MR. HELLER: Not at all.
>
> JUDGE PERRY: You are not saying that?
>
> MR. HELLER: Not at all when you have a motivation to do so.
>
> JUDGE PERRY: Isn't it kind of a common practice for those who design integrated circuits to put multiple functions into those circuits?
>
> MR. HELLER: It probably is a common practice, but they have to have a motivation to do so.

A257-258 (30:17-31:4).

### 3.    The Board's Final Written Decision

The Board issued its final written decision in August 2014, holding that the challenged claims are invalid. The Board rejected MCM's Seventh Amendment

challenge because it concluded that this Court's *Patlex* decision applied also to inter partes reviews. A4-5. It noted that MCM had not identified any significant distinction between ex partes reexaminations, which were addressed in *Patlex*, and inter partes reviews. A5.

On the obviousness challenge, the Board concluded that a preponderance of evidence demonstrates that the challenged claims are obvious over Kobayashi and Kikuchi. A9 (citing A83-98 (HP's Petition 42-57); A434-442 (Dr. Banerjee's Declaration ¶¶ 102-122). The Board rejected MCM's "single chip" argument based on disclosures from Kikuchi and Kobayashi that describe a single-chip controller and MCM's admission that it is a common practice to integrate multiple functions into a single chip. A9-11.

## V.     SUMMARY OF ARGUMENT

MCM's appeal is directed to issues that either are beyond the jurisdiction of this Court, are not supported by the law, or were previously waived.

This Court lacks jurisdiction to review MCM's first two issues—privity and alleged deficiencies in the obviousness presentation in HP's petition—because they refer to issues that the Board resolved in its decision to institute, which is final and nonappealable. 35 U.S.C. § 314(d). These issues also are inappropriate for mandamus review because the Board acted well within its authority when it instituted the inter partes review.

MCM defended the patentability of its claims on a single ground in its response: that the prior art teaches using multiple controller chips, not a single controller chip as claimed. The Board rejected this argument because it found appropriate teachings in the prior art and because MCM's counsel admitted that it was a common practice to merge multiple functions into a single integrated circuit. The Board's conclusion that the prior art adequately teaches a single-chip system is supported by substantial evidence and, therefore, the Board's final written decision should be affirmed.

The other patentability arguments that MCM seeks to raise in its brief have been waived because MCM did not present them to the Board in its patent owner's response. For example, MCM did not argue to the Board that the claims' reference

16

to "detectors," "interface mechanisms" or "flash adapters" somehow distinguishes the prior art. This Court routinely declines to consider arguments raised for the first time on appeal, and it should do so again, here.

Inter partes reviews do not violate the Seventh Amendment or Article III of the Constitution. Inter partes reviews, like ex parte reexaminations, involve public rights. *Patlex* rejected constitutional challenges to reexaminations, and that holding was reaffirmed in *Joy Technologies. Patlex* has not been overruled by intervening Supreme Court authority, as MCM alleges. Indeed, MCM's *Stern* case actually confirms that a "public rights" exception to the Seventh Amendment applies when a claim derives from a federal regulatory scheme, or where its resolution by an expert governmental agency is deemed essential to a limited regulatory objective within the agency's authority. Inter partes reviews fit squarely within this exception.

# VI.   ARGUMENT

## A.    Standard of Review

This Court does not review issues decided by the Board in a decision to institute an inter partes review. *In re Cuozzo Speed Technologies, LLC*, ___ F.3d ___, No. 2014-1301, 2015 WL 448667, at *3 (Fed. Cir. Feb. 4, 2015). The Board's decision to institute is final and nonappealable. 35 U.S.C. § 314(d).

This Court does review the Board's final written decision. 35 U.S.C. § 319. In doing so, the Court reviews the Board's factual findings for substantial evidence and its legal conclusions de novo. *Cuozzo,* 2015 WL 448667 at *9.

This Court also reviews constitutional issues de novo. *Tegal Corp. v. Tokyo Electron Am., Inc*., 257 F.3d 1331, 1339 (Fed. Cir. 2001).

## B.    This Court lacks jurisdiction to review MCM's first two issues on appeal because they were decided in the Board's Decision to Institute.

### 1.    The Board's Decision to Institute is not reviewable in an appeal of the Final Written Decision.

MCM challenges the Board's decision to institute the inter partes review of claims 7, 11, 19 and 21 of the '549 patent on two bases. MCM frames the underlying issues as follows:

1    Whether ***the Petition*** requesting *inter partes* review of U.S. 7,162,549 filed by Hewlett-Packard Company established by a

preponderance of the evidence as required by 35 U.S.C. § 316 (e) that claims 7, 11, 19 and 21 are unpatentable;[2]

2.  Whether Hewlett-Packard Company established it had standing **to file the Petition** and whether 35 U.S.C. § 315(b) barred the institution of the *inter partes* review under existing law on privity**.**

MCM Br. at 2-3 (emphases added).

The Board decided each of these issues in its decision to institute, not its final written decision. This Court held in *Cuozzo* that § 314(d) prohibits this Court from reviewing a Board's decision to institute in an appeal of the final written decision:

> We conclude that § 314(d) prohibits review of the decision to institute IPR even after a final decision. On its face, the provision is not directed to precluding review only before a final decision. It is written to exclude all review of the decision whether to institute review. Section 314(d) provides that the decision is both "nonappealable" and "final," i.e., not subject to further review.

2015 WL 448667, at *3. This Court, therefore, lacks jurisdiction to review the first two issues MCM identifies in the appeal.

---

[2]    MCM's brief misstates the standard that applies to the Board's decision to institute. MCM Br. at 2. To institute an inter partes review, a petitioner need only demonstrate a reasonable likelihood that at least one of the challenged claims is invalid. 35 U.S.C. § 314(a). The preponderance of the evidence standard applies to the Board's final written decision, which is rendered after consideration of all evidence accumulated during the inter partes review. 35 U.S.C. § 316(e).

19

> **2.     This case does not present circumstances warranting mandamus review of the Board's Decision to Institute.**

*Cuozzo* did not foreclose possible mandamus review of a Board's decision to institute but notes those reviews will occur only in extraordinary circumstances where the Board clearly and indisputably exceeded its statutory authority. 2015 WL 448667, at *4. No such circumstances are present here. With regard to the sufficiency of the obviousness presentation made in HP's petition, *Cuozzo* states that any alleged defects are irrelevant because the Board's authority at the final decision stage is not limited to the alleged grounds in the petition. *Id.* at *3. And, with respect to the privity issue, the Board acted within its discretion in finding HP and Pandigital were not in privity for purposes of § 315(b). In fact, this Court already has rejected MCM's petition for mandamus concerning the privity issue, which MCM filed after the Board instituted inter partes review. *In re MCM*, 554 F.App'x at 945.

> **a.     The Board resolved all alleged inadequacies of the obviousness analysis in HP's petition in its Decision to Institute.**

Although MCM alleges various deficiencies with HP's opening petition, the decision to institute demonstrates the Board considered all information provided by the parties and concluded that HP had demonstrated a prima facie case of obviousness. A27-29. The Board's decision to institute the inter partes review is final and nonappealable. *Cuozzo*, 2015 WL 448667, at *3.

20

### b.  The Board acted within its authority in rejecting MCM's privity argument.

Mandamus review of the Board's privity analysis is unwarranted because the Board did not clearly exceed its statutory authority. The Board's analysis recognizes that, even when privity relationships exist, they are limited. In rejecting MCM's privity argument, the Board followed guidance from the legislative history and from this Court. It certainly did not exceed its statutory authority.[3]

While the statute does not define the term "privy," the legislative history refers to limitations identified in this Court's decision in *International Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325 (Fed. Cir. 2000)), which describes privity relationships based on successive ownership in property as having limited purposes and limited reach:

> [A] judgment with respect to a particular property interest may be binding on a third party based on a transfer of the property in issue to the third party after judgment. A corollary of that principle, however, is that when one party is a successor in interest to another with respect to particular property, the parties are in privity only with respect to an adjudication of rights in the property that was transferred; they are not in privity for other purposes, such as an adjudication of rights in other property that was never transferred between the two.

---

[3] The Board's analysis of the privity issue is entitled to *Chevron* deference because, in 35 U.S.C. § 316, Congress authorized the PTO to establish regulations governing inter partes reviews. *Cuozzo*, 2015 WL 448667, at *7-8 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).

154 CONG. REC. S9,987 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl, citing

*Int'l Nutrition*, 220 F.3d 1325).

The Board's decision to institute demonstrates that the Board followed this

guidance in rejecting MCM's privity argument. The Board found no evidence that

HP could have exercised control over Pandigital's defense of the lawsuit brought

by TPL and concluded the mere fact that two companies were successive owners

of allegedly infringing property is insufficient alone to confer privity for purposes

of an invalidity challenge under an inter partes review. A20-21.

MCM's reading of *Taylor*, *International Nutrition*, and *Aevoe* are wrong.

*Taylor* stands for the proposition that litigants are not bound by judgments in

personam to which they are not a party. *Taylor v. Sturgell*, 553 U.S. 880, 898

(2008). While *Taylor* recognizes six limited exceptions to this general rule,

including an exception for successive ownership of property subject to a judgment,

*Taylor* does not say, as MCM suggests, that successive owners of such property

will be in privity for all purposes. In fact, *Taylor* is silent on the scope of privity

that arises based on the transfer of property subject to a judgment.

As discussed above, *International Nutrition* recognizes that, when a party is

a successor in interest to another's property, any privity relationship that arises

between them by virtue of the transfer is limited to rights in the transferred

property. *Int'l Nutrition,* 220 F.3d at 1329. MCM's argument, however, is that

22

privity arising from the transfer of allegedly infringing property exists for all purposes—a proposition that *International Nutrition* refutes.

The *Aevoe* decision cited by MCM is inapposite. There, this Court found that a district court had the power to bind certain non-party companies to an injunction against patent infringement. *Aevoe Corp. v. AE Tech. Co.*, 727 F.3d 1375, 1384 (Fed. Cir. 2013). In that case, the non-party companies were "acting in concert" with the named defendant to resell infringing products and to design around the asserted patent (unsuccessfully). *Id.* Because the parties were acting in concert with respect to the infringing goods, the privity relationship between them was directly related to the infringement issue that the injunction was intended to remedy. Here, however, any successive ownership of allegedly infringing products between HP and Pandigital has no relationship to the invalidity issue before the Board. A21.

This is not a case where the Board clearly and indisputably exceeded its authority to institute review of a patent. Moreover, this Court has already found in the context of denying MCM's petition for mandamus, that MCM's privity arguments did not meet the heavy burden required for the grant of mandamus relief. *In re MCM,* 554 F.App'x at 945. There is no reason to disturb the final, nonappealable decision of the Board on this issue.

**C.    The Board's obviousness determination should be affirmed.**

A claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a) (pre-AIA).[4] Obviousness is a question of law based on factual findings relating to the four *Graham* factors: (1) the level of ordinary skill in the art; (2) the scope and content of the prior art; (3) the differences between the prior art and the challenged claim; and (4) secondary considerations of non-obviousness. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1359-60 (Fed. Cir. 2012) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

In *KSR International Co. v. Teleflex, Inc.*, the Supreme Court instructed courts to take an "expansive and flexible approach" to obviousness determinations. 550 U.S. 398, 415 (2007). A combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. *Id*. at 416. In making this assessment, courts must consider whether there was a reason to combine the known elements in the fashion claimed by the patent at issue. *Id.* at 418. The reason can come from the prior art, the background

---

[4]    Because the '549 patent application was filed before March 16, 2013, the pre-AIA § 103(a) applies. *See* AIA, Pub. L. No. 112-29, § 3(n), 125 Stat. 284, 293 (2011).

knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, and/or common sense. *Id.* Motivation is a question of fact that should be affirmed on appeal if supported by substantial evidence. *Pregis Corp. v. Kappos,* 700 F.3d 1348, 1353-54 (Fed. Cir. 2012).

Here, the Board reviewed all the evidence, applied the proper legal principles, and concluded the challenged claims were obvious. It did so based on its factual findings that "a preponderance of the evidence demonstrates that the combination of Kobayashi and Kikuchi discloses each of the limitations of the challenged claims, as presented in HP's petition," and that "a preponderance of the evidence demonstrates that a person of ordinary skill in the art would have combined the Kobayashi and Kikuchi references." A9.

### 1.    The Board properly limited its Final Written Decision to the sole argument that MCM presented in its Patent Owner's Response: Whether the prior art adequately teaches a single-chip controller.

Although MCM nominally identifies this appeal as taken from the Board's final written decision, the bulk of MCM's arguments concerning patentability are directed to alleged infirmities of HP's petition, which were resolved in the Board's decision to institute. Some excerpts help illustrate the focus of MCM's appeal:

> HP's ***Petition***, however, inaccurately alleged that Kobayashi generally disclosed all of the limitations of the claims but for one: the management of bad block mapping in firmware in the event a flash card did not have a controller for error correction. For that "function," HP relied upon Kikuchi.

25

> HP's **Petition** did not establish that Kobayashi disclosed a controller chip having 1) an interface mechanism as claimed, 2) a detector as claimed, and 3) a flash adapter as claimed. The Board's decision erroneously relies on HP's "assertion" that Kobayashi discloses every claim limitation of the challenged claims except bad block mapping error correction [Decision at p. 9, A9] when that "assertion" simply is not supported by the reference.
>
> In its **Petition**, HP did not argue that Kikuchi disclosed a single controller chip that contains Kobayashi's functionality.

MCM Br. at 10, 20, 28 (bracketed text in original) (emphases added).

This Court need not labor to reconstruct arguments that predate the decision to institute. Once the Board instituted the inter partes review, MCM became responsible to identify in its patent owner's response all arguments for patentability that allegedly distinguish its claims from the prior art. *Office Patent Trial Practice Guide,* 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012) (Patent owner's response should identify bases for belief that claims are patentable.); A1251 (Scheduling Order) ("any arguments for patentability not raised in the response will be deemed waived.").

Here, MCM presented a single argument of patentability in its patent owner's response, and the Board limited its consideration to that issue:

> MCM explicitly addresses only the requirement of "a controller chip," arguing that Kobayashi does not disclose using a single chip with the claimed functionality, but instead has "multiple chips that perform distinct functions."

A9; *see also* A200-06 (Patent Owner's Response) (arguing that even if the prior art is combined, it would not yield a single controller chip with the claimed

functionality). The Board properly confined its analysis to this issue and ultimately rejected the argument because the prior art contains a sufficient teaching of this subject matter. A9-11.

## 2. The Board's factual findings are supported by substantial evidence.

The Board's conclusion, that one of ordinary skill would have been motivated to place the claimed functionality on a single chip, is a finding of fact that is supported by substantial evidence. A10-11. First, the Board found that both references teach the use of a single-chip controller. A10. Kobayashi teaches that controller 122 is "configured of a one-chip microprocessor." A338 (col. 6:12-14), cited at A10. Kikuchi identifies controller 10 as a one-chip controller. A353 (ll. 10-15), cited at A10. Kikuchi also discloses that the one-chip controller 10 contains other controllers, each with dedicated functions. A355 (ll. 14-20). As shown in the figures below, Kikuchi's one-chip controller 10 (FIG. 1) has a flash table controller 28, an error controller 32, a reset processor 22, an address converter 24 and a command processor 26 integrated therein (FIG. 2). A355; A386. Thus, the prior art teaches that multiple processors and controllers 22, 26, 28, 32, each with different functions, can be integrated into a single-chip controller 10.



**Kikuchi, FIG. 1 (A385)
(annotated to show one chip
controller 10)**

**Kikuchi, FIG. 2 (A386)
(annotated)**

Second, MCM admitted at oral argument that it is a common practice to integrate multiple functions into a single integrated circuit. A257-258 (30:17-31:4). Thus, the record provides ample evidence on which to conclude the worker of skill would have had a reason to combine functionality of the prior art's various controllers into a single controller chip. *See KSR*, 550 U.S. at 418 (A court should account for inferences and creative steps that a person of ordinary skill would employ.).

MCM does not challenge the final written decision on this issue. It does not argue that the prior art does not teach one-chip controllers or that Kikuchi's one-chip controller does not include several other functional units integrated therein. It ignores its own admission, made at oral argument, that it was a common practice to integrate such functionality into a single integrated circuit. Accordingly, the Board's conclusions are supported by substantial evidence.

### 3.    MCM's other arguments should be rejected.

MCM's brief raises several additional challenges to the final decision, but none of them warrants reversal.

First, MCM argues that the Board provides no support for its factual findings that Kobayashi discloses three specific claim elements, a "detector," an "interface mechanism" and a "flash adapter." MCM Br., 24-27. The Court should reject these arguments because MCM failed to present these arguments in its patent owner's response and, therefore, MCM waived them. *See* A1251 (Scheduling Order) (Any arguments concerning patentability not presented in the patent owner's response are deemed waived.). This Court does not consider arguments that are raised for the first time on appeal absent exceptional circumstances. *See*, *e.g.*, *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012).[5] No such circumstances are present, here.

This Court also should reject MCM's argument that the Board committed reversible error by basing its final decision on arguments that HP did not present in its petition. MCM Br. at 36. The Board's review is not limited solely to the

---

[5]    HP's opening petition explains in detail how the prior art disclose or teach each of the claimed limitations, including a "detector," an "interface mechanism" and a "flash adapter." *See*, *e.g.*, A94-98. Although not subject to the Court's review here, in its decision to institute, the Board indicated it had reviewed the prior art and was satisfied that HP's petition demonstrates that the prior art taught these elements. A27-28. Thus, not only are these arguments waived, they are wrong.

arguments presented *in haec verba* in HP's petition, as MCM argues. This Court
already has recognized that the Board has broader authority:

> Nor does the IPR statute expressly limit the Board's authority at
> the final decision stage to the grounds alleged in the IPR petition.
> It simply authorizes the Board to issue "a final written decision
> with respect to the patentability of any patent claim challenged by
> the petitioner and any new claim added under section 316(d). 35
> U.S.C. § 318(a).

*See Cuozzo,* 2015 WL 448667, at *3. Here, the Board's final decision adopted the
very same ground of invalidity that HP presented in its petition, obviousness over
Kobayashi and Kikuchi. The Board reviewed all material in the record—the
parties' arguments, the prior art references, a declaration from HP's expert, and
MCM's admissions at oral argument—and issued its final decision finding the
challenged claims obvious. It acted properly in doing so.

MCM's other related arguments, that the Board somehow required MCM to
rebut arguments that were not presented in the petition and that the Board based its
findings on a fictional combination of references, also should be rejected. MCM
Br. at 36. MCM was not required to rebut an argument that was not presented in
the petition; rather, MCM was free to raise in its response any argument for
patentability that it desired. A1251. MCM presented only one argument in its
response in favor of patentability, the claims' reference to a single "chip," which as
discussed above is taught by the prior art. A9. Moreover, the Board did not base its
decision on any "fictional combination" of references; instead, the Board adopted

the very same invalidity challenge that HP identified in its petition, obviousness based on Kobayashi and Kikuchi. These are not new arguments, as MCM argues, and MCM faced no undue prejudice to explain why its claims are patentable over this prior art.

MCM defended its claims—and lost them—on the issue of whether there was sufficient motivation to merge prior art functionality into a single chip. The Board found, as a factual matter, that the prior art adequately taught this subject matter. This Court should affirm the Board's finding because it is supported by substantial evidence, including MCM's admissions at oral argument.

## D.    Inter Partes Reviews do not violate the Seventh Amendment or Article III.

MCM's constitutional arguments have been rejected by this Court in the patent reexamination context, and they should be rejected in the inter partes review context as well because, for the purpose of constitutional analysis, inter partes reviews should be treated the same as reexaminations. In *Patlex Corp. v. Mossinghoff*, this Court recognized that, even though validity is often litigated in disputes involving private parties, the threshold question of validity turns on whether the PTO properly granted the patent—an issue involving public rights, not private rights. 758 F.2d 594, 604 (Fed. Cir. 1985). The Court observed that the reexamination statute was enacted to correct errors made by the government in

issuing patents that should never have been granted. *Id*. The Court concluded that this Congressional purpose is presumptively correct and "that it carries no insult to the Seventh Amendment and Article III." *Id*.

Inter partes reviews serve these same goals. Inter partes reviews involve the same public rights—patent rights—as were involved in *Patlex*. Inter partes reviews correct the same governmental mistakes as in *Patlex,* to correct mistakes in issuing patents that never should have been granted. Thus, there are no constitutionally significant distinctions between inter partes reviews and reexamination proceedings. *See Cooper v. Lee*, No. 1:14-cv-00672-GBL-JFA, 2015 WL 686041, at *7-8 (E.D. Va. Feb. 18, 2015).

Congress in enacting the statute considered whether inter partes reviews would violate Article III and the Seventh Amendment, and observed that inter partes reviews, like reexaminations, involve public rights. *See* 157 CONG. REC. S5,374-76 (daily ed. Sept. 7, 2011) (letter from Hon. Michael W. McConnell). In his letter, Judge McConnell, a former member of the U.S. Court of Appeals for the Tenth Circuit and the current director of the Constitutional Law Center at Stanford Law School, explained that the reasoning in *Patlex* applied equally in the inter partes review context since both reexamination and inter partes review exist to correct governmental mistakes. *Id*. Inter partes reviews, like reexaminations, are authorized by federal statute and involve public rights, and therefore comply with

Article III and the Seventh Amendment, for the same reasons set forth in *Patlex* and *Joy Technologies*, which are discussed *infra*. *See* 157 CONG. REC. S5,374-76.

MCM argues both that *Patlex* was incorrectly decided in light of the Supreme Court's decision in *McCormick Harvesting,*[6] MCM Br. at 47, and that *Patlex* has been overruled by intervening Supreme Court cases, namely *Granfinanciera*, *Markman,* and *Stern*. *Id.* at 53-56. MCM is incorrect.

This Court in *Patlex* expressly considered *McCormick Harvesting* and concluded it did not forbid Congress from enacting the reexamination statute to correct governmental mistakes. 758 F.2d at 604. The same conclusion applies to inter partes reviews.

*Patlex* has not been overruled, nor is it inconsistent with subsequent Supreme Court decisions. In fact, in *Joy Technologies, Inc. v. Manbeck*, this Court considered *Granfinanciera* and reaffirmed *Patlex's* reasoning:

> We conclude, contrary to Joy's contention, that the *Granfinanciera* decision affirms the basic underpinning of *Patlex*, *viz.*, that cases involving "public rights" may constitutionally be adjudicated by legislative courts and administrative agencies without implicating the Seventh Amendment right to jury trial.

959 F.2d 226, 228 (Fed. Cir. 1992), *cert denied*, 506 U.S. 829 (1992) (citing *Granfinanciera S.A. v. Nordberg*, 492 U.S. 31 (1989)). MCM neglects to address *Joy Technologies* even though the Board relied on it in its final written decision.

_____

[6]    *McCormick Harvesting Mach. Co. v. Aultman*, 169 U.S. 606 (1898).

MCM's argument that *Patlex* is inconsistent with *Granfinanciera* has been rejected already by this Court.

Contrary to MCM's allegations that *Stern v. Marshall* supports MCM Seventh Amendment challenge, *Stern* actually undermines it. *Stern* recognizes the same "public rights" exception that drove the *Patlex* decision over thirty years ago. There, the Supreme Court confirmed that "public rights" exceptions to the Seventh Amendment remain appropriate for a claim that derives from a federal regulatory scheme or whose resolution by an expert governmental agency is deemed essential to a limited regulatory objective within the agency's authority. *Stern*, 131 S.Ct. 2594, 2613 (2011). Inter partes reviews fit squarely within this exception under both rationales. First, patent rights are solely granted by the federal government and derive from a federal regulatory scheme. *Patlex*, 758 F.2d at 604. Second, inter partes reviews involve patent validity issues that fall within the expertise of the PTO, the same agency that examines patent applications in the first place. Accordingly, *Stern* supports a conclusion that inter partes reviews comply with the Seventh Amendment.

MCM's reliance on *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), also is without merit. MCM Br. at 56. There, the Supreme Court held that there was no Seventh Amendment right to jury resolution of claim construction issues. *Markman*, 517 U.S. at 376-91. And, although *Markman* states that

infringement cases as a whole are tried to juries, *id.* at 377, this Court has recognized that the Seventh Amendment does not require jury trials for all infringement actions. For example, in cases where a patent owner seeks only equitable relief for infringement and an accused infringer asserts invalidity defenses, a right to a jury trial is not implicated. *Tegal Corp.*, 257 F.3d at 1339-41 (Fed. Cir. 2001) (citing *Markman*); *see also In re Tech. Licensing Corp.*, 423 F.3d 1286, 1290-91 (Fed. Cir. 2005) (holding that there is no right to a jury trial for an invalidity claim when the patent owner seeks only equitable relief for infringement.) The *Markman* Court did not discuss Seventh Amendment issues in the context of patent invalidity, and it certainly did not hold that a patent owner has a Seventh Amendment right to a jury trial on an invalidity determination. *Markman* has not overruled *Patlex* or *Joy Technologies*.

Mr. Cooper bases his constitutional challenge on slightly different authority and also on procedural differences between reexamination and inter partes reviews. None of Mr. Cooper's authority, however, involves an attempt by a federal agency to correct errors in issuing patents; indeed, no agency held the statutory authority to do so until Congress implemented ex parte reexamination. *Patlex,* 758 F.2d at 601. Courts have not considered similarities between agency procedure and litigation procedure to be a factor in determining whether Congress may refer an issue to agency adjudication. Instead, as *Stern* explains, Courts inquire whether the

claim at issue derives from a federal regulatory scheme or whether its resolution by an expert governmental agency is deemed essential to a limited regulatory objective within the agency's authority. *Stern*, 131 S.Ct. at 2613. As explained above, inter partes reviews fit neatly within these exceptions.

<u>C</u>ONCLUSION AND <u>S</u>TATEMENT OF <u>R</u>ELIEF <u>S</u>OUGHT

For the foregoing reasons, HP respectfully requests this Court to affirm the

final written decision of the Board.

Dated: March 19, 2015                    Respectfully submitted,


/s/ Marcia H. Sundeen
Marcia H. Sundeen
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000

T. Cy Walker
Robert L. Hails, Jr.
Adeel Haroon
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005
(202) 220-4200

Attorneys for Appellee
Hewlett-Packard Company

**United States Court of Appeals
for the Federal Circuit**

*MCM Portfolio LLC v. Hewlett-Packard Company, 2015-1091*

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KENYON & KENYON LLP, Attorneys for Appellee to print this document. I am an employee of Counsel Press.

On [date] counsel has authorized me to electronically file the foregoing Brief for Appellee with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

| | |
|---|---|
| Edward Peter Heller, III | Mark R. Freeman |
| (Principal Counsel) | (Principal Counsel) |
| Susan Anhalt | William E. Havemann |
| Alliacense Limited LLC | Department of Justice |
| 4880 Stevens Creek Boulevard | Appellate Staff, Civil Division |
| Suite 103 | 950 Pennsylvania Avenue, NW |
| San Jose, CA 95129 | Washington, DC 20530 |
| 408-886-5446 | 202-314-8877 |
| Ned@alliacense.com | mark.freeman2@usdoj.gov |
| rhails@kenyon.com | william.e.havemann@usdoj.gov |
| Counsel for Appellant | Counsel for Intervenor |

Nathan K. Kelley
Scott Weidenfeller
U.S. Patent and Trademark Office
Office of the Solicitor
PO Box 1450, Mail Stop 8
Alexandria, VA 22313
571-272-9035
nathan.kelley@uspto.gov
scott.weidenfeller@uspto.gov
Counsel for Intervenor

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.  Any counsel for Amicus Curiae, appearing at the time of filing, will be served only via the CM/ECF email notice.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

January 28, 2015                                    /s/ Robyn Cocho
                                                           Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

_ X___  The brief contains 7,332 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____  The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

_ X__  The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font or

_____  The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.


March 19, 2015                          /s/ Marcia H. Sundeen
                                        Marcia H. Sundeen
                                        *Counsel for Appellee*
                                        *Hewlett-Packard Company*